(Reap. Dec. 10532)

CIBA COMPANY, INC. *v.* UNITED STATES

Entry No. 1025260.

(Decided June 6, 1963)

*Eugene R. Pickrell* (*Murray Sklaroff* of counsel) for the plaintiff.
*John W. Douglas,* Assistant Attorney General (*Daniel I. Auster,* trial attorney), for the defendant.

WILSON, Judge: This appeal for reappraisement involves the dutiable value of a coal-tar color described as "Deorlene Brilliant Red R," which was exported from Switzerland on June 8, 1959.

The involved merchandise was appraised at $2.0191 per pound, net, packed, on the basis of United States value, as defined in section

402a(e) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, pursuant to the provisions of paragraph 28 (c) and (d) of the said tariff act, as amended.

Plaintiff claims that the proper basis of appraisement for the merchandise in question is United States value, but that such value should have been the value, as defined in section 402(c) of the tariff act, as amended by the Customs Simplification Act of 1956.

The definitions of United States value, as here in issue, are as follows:

Section 402a(e) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, *supra* (the basis of appraisement):

The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

Section 402(c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, *supra* (the claimed basis of appraisement):

For the purposes of this section, the United States value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal market of the United States for domestic consumption, packed ready for delivery, in the usual wholesale quantities and in the ordinary course of trade, with allowances made for—

(1) any commission usually paid or agreed to be paid, or the addition for profit and general expenses usually made, in connection with sales in such market of imported merchandise of the same class or kind as the merchandise undergoing appraisement;

(2) the usual costs of transportation and insurance and other usual expenses incurred with respect to such or similar merchandise from the place of shipment to the place of delivery, not including any expense provided for in subdivision (1) of this subsection; and

(3) the ordinary customs duties and other Federal taxes currently payable on such or similar merchandise by reason of its importation, and any Federal excise taxes on, or measured by the value of, such or similar merchandise, for which vendors at wholesale in the United States are ordinarily liable.

If such or similar merchandise was not so sold or offered at the time of exportation of the merchandise undergoing appraisement, the United States value shall be determined, subject to the foregoing specifications of this subsection, from the price at which such or similar merchandise is so sold or offered at the earliest date after such time of exportation but before the expiration of ninety days after the importation of the merchandise undergoing appraisement.

The case was submitted for decision upon the following stipulation of facts, entered into between counsel for the respective parties:

1. The merchandise at bar consists of Deorlene Brilliant Red R, a coal tar dye, exported from Switzerland during the first half of the calendar year 1959.

2. "Deorlene Brilliant Red R" appears on the final list, T.D. 54521, preceded by an asterisk (*), which asterisk indicates that the article thus marked was not on the preliminary list published in the Federal Register dated August 23, 1957 (22 F.R. 6842), but was added after investigation provided for under section 6(a) of the Customs Simplification Act of 1956.

3. The following notices relating to the preparation of the preliminary and final lists referred to in Section 6(a) of said act were published in the Federal Register;

(A) A notice inviting comments relating to publication of the Preliminary List. (Friday, November 9, 1956, 21 F.R. 8669.)

(B) A notice extending the time for comments relating to publication of the preliminary list. (Saturday, January 5, 1957, 22 F.R. 152.)

(C) A notice of procedure to be followed by domestic interests after publication of the preliminary list. (Tuesday, August 20, 1957, 22 F.R. 6663.)

(D) The preliminary list (Friday, August 23, 1957, 22 F.R. 6842).

(E) The final list (Tuesday, January 28, 1958, 23 F.R. 539).

Section 6(a) of the Customs Simplification Act of 1956 (Public Law 927—84th Congress, 70 Stat. 943) reads as follows:

SEC. 6. (a) The Secretary of the Treasury shall determine and make public a list of the articles which shall be valued in accordance with section 402a, Tariff Act of 1930, as amended by this Act, as follows:

As soon as practicable after the enactment of this Act the Secretary shall make public a preliminary list of the imported articles which he shall have determined, after such investigation as he deems necessary, would have been appraised in accordance with section 402 of the Tariff Act of 1930, as amended by this Act, at average values for each article which are 95 (or less) per centum of the average values at which such article was actually appraised during the fiscal year 1954. If within sixty days after the publication of such preliminary list any manufacturer, producer, or wholesaler in the United States presents to the Secretary his reason for belief that any imported articles not specified in such list and like or similar to articles manufactured, produced, or sold at wholesale by him would have been appraised in accordance with such section 402 at average values which are 95 (or less) per centum of the average values at which they were or would have been appraised under section 402a, Tariff Act of 1930, as amended by this Act, the Secretary shall cause such investigation of the matter to be made as he deems necessary. If in the opinion of the Secretary the reason for belief is substantiated by the investigation, the articles involved shall be added to the preliminary list and such list, including any additions so made thereto, shall be published as a final list. Every article so specified in the final list which is entered, or withdrawn from warehouse, for consumption on or after the thirtieth day following the date of publication of the final list shall be appraised in accordance with the provisions of section 402a, Tariff Act of 1930, as amended by this Act.

In the Senate Report No. 2560, July 13, 1956, to accompany H.R. 6040, Customs Simplification Act of 1956 (see U.S. Code Congres-

sional and Administrative News, vol. 3—84th Congress, second session, 1956, at page 4179), we find—

## Senate Report No. 2560

THE Committee on Finance to whom was referred the bill (H.R. 6040) to amend certain administrative provisions of the Tariff Act of 1930 and to repeal obsolete provisions of the customs laws, having considered the same, report favorably thereon with amendments and recommend that the bill as amended do pass.

## AMENDMENTS

The amendments are as follows:

1. Section 6 is a new section adopted by this committee which prevents the application of section 2, the valuation procedures, to those articles which the Secretary finds would be reduced in value by 5 percent or more under section 2. (The 5 percent, as used in the bill and in this report, refers to the possible differences in dutiable value of imported goods and not to differences in the amount of tariff duties.) The Secretary of the Treasury would prepare a preliminary list of such articles based on the sample survey made by the Treasury Department of imports made during the fiscal year 1954. Domestic interests would have 30 days after publication of this preliminary list to suggest the reasons for their belief that other articles would be reduced in value by 5 percent or more under the new valuation procedures. After investigation of these representations any of these articles which the Secretary determined would be so reduced in value would be added to the list and a final list of articles would then be published. Thirty days after publication of this final list all imports not listed would be valued under the procedures contained in section 2 of H.R. 6040. All articles on the list would continue to be valued under the valuation procedures in effect before the enactment of H.R. 6040.

The Secretary of the Treasury would prepare a second preliminary list based upon a year's experience under H.R. 6040. This list would delete any articles which the Secretary found would no longer be reduced by 5 percent or more if valued under the provisions of H.R. 6040 and would add any articles which it was found would then make a 5 percent lower valuation under the H.R. 6040 provisions than they would if the former provisions of the law were applicable. Opportunity for comment would again be afforded domestic interests and these comments would be investigated, additions made to the preliminary lists, and a final list published. Thirty days after publication of this second final list any importation not on this list would be valued under the provisions of H.R. 6040 whether or not it had appeared on the first list. Every importation listed on the second list would be valued under the valuation provisions in effect before the enactment of H.R. 6040 whether or not the imported article was so valued under the first final list.

After a year's experience under the second list, a third list would be prepared and put into operation in the same manner. After a year's experience under the third list, a fourth list would be prepared and put into operation. All articles listed on the fourth list would continue to be valued under the valuation standards in existence before adoption of H.R. 6040 unless the Congress made other provision.

Each final list together with all explanatory data would be sent to the chairmen of the Committee on Ways and Means of the House of Representatives and the Committee on Finance of the Senate.

*       *       *       *       *       *       *

and, at page 4181, Senate Report No. 2560 continues as follows:

In order to prevent any sudden material change in valuation as a result of the enactment of the bill, the committee adopted amendments providing for the publication of a list of articles which would be reduced by 5 percent or more in value, and preserving the present system of using the higher of the 2 values (foreign or export value) on all the items so listed. The list so prepared would be tentative until domestic interests had ample opportunity to suggest that additional items should be added. After an investigation of these new suggested items a final list would be prepared and published in the Federal Register. All items on the list then would continue to be valued on the basis of the present law. After a period of about 1 year, a new list would be prepared deleting any articles then found to be reduced by less than 5 percent and adding any articles which would be reduced by 5 percent or more. Similarly, third and fourth lists would be prepared after a year's experience with each preceding list. The Treasury Department estimates that the provisions of section 2 of H.R. 6040 would be used in about 90 percent of the cases at the time of the issuance of the first list and that the percentage would increase with each succeeding list. In other words, the Department's research indicates that less than 10 percent of the ad valorem items would be on the list as showing an important value reduction of 5 percent or more.

Each list, as it was made final, would be sent to the chairmen of the Ways and Means Committee of the House and the Committee on Finance of the Senate, respectively, and Congress would be kept fully informed as to current developments under the new procedure. As a result of the limitation of any reduction in value to less than 5 percent, and because some imports will increase in value and many more will not change at all, the Treasury estimates that the average reduction in value will be only a fraction of 1 percent. It would appear, therefore, that the margin of protection lost by domestic producers would be very small, especially during the life of the lists.

An amendment adopted by the Committee would provide that the articles on the fourth and final list would continue to be appraised under the valuation procedures in effect before the enactment of H.R. 6040 unless and until the Congress provided otherwise.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

It is the contention of the plaintiff, in this case, that the Secretary of the Treasury exceeded his statutory authority by designating the imported commodity, "Deorlene Brilliant Red R," in the "final" list, promulgated pursuant to section 6(a) of the Customs Simplification Act, *supra*, maintaining, in this connection, that the Secretary, in determining what merchandise to include on the "final" list, was restricted to a consideration of articles actually appraised in the fiscal year 1954.

The record discloses that "Deorlene Brilliant Red R" appears on the "final" list, T.D. 54521, preceded by an asterisk (\*), which asterisk indicates that the article thus marked was not on the "preliminary" list, published in the Federal Register, dated August 23, 1957 (22 F.R. 6842), but was added after the investigation provided for under section 6(a) of the Customs Simplification Act of 1956. It further ap-

pears that the merchandise in question was never appraised during the fiscal year 1954, the first importation of this merchandise being in 1956.

It has been agreed that if the final list designation of the merchandise is proper, the appraised value represents United States value, that is, the value under the "old" valuation provisions. If the final list designation of the merchandise was invalid, then, the proper United States value is that value, as defined under section 402(c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, and that such value is $1.9581 per pound, net, packed.

It appears significant, in our present determination, to note a comparison of the language of section 6 of the Customs Simplification Act of 1956, *supra*, as first proposed to the Congress, with the version as later reported by the Senate Finance Committee—(Senate Report No. 2560). In the version of section 6(a), as adopted by the Senate Finance Committee, there was deleted from said section, as originally proposed with respect to the placing on the preliminary list imported articles which had not been previously specified on such list, the language "entered during the fiscal year 1954 but" and, further, as to articles not specified on said preliminary list, the words "or would have been," which appeared prior to the language "appraised under section 402a, Tariff Act of 1930, as amended by this Act," were substituted for the word "actually," which had appeared before the last above-quoted language as it was originally proposed in said section 6, *supra*. Section 6, as finally enacted after amendment by the Senate, is for all practical purposes identical with the version as reported by the Senate Finance Committee, except that it provides for one final list, instead of four final lists, as originally proposed.

In my opinion, the effect of the deletion from section 6 of the Customs Simplification Act of 1956, *supra*, as originally proposed, of the language "entered during the fiscal year 1954 but" and the further substitution of the words "or would have been," as heretofore noted, for the word "actually," with respect to the appraisement of imported articles, would appear to indicate that it was not the intention of Congress to limit the Secretary of the Treasury in his consideration of articles to be placed on the "final" list and, specifically, that it was not the intention to confine such consideration to merchandise which was actually appraised during the fiscal year of 1954, but that the legislation authorized under the Customs Simplification Act permitted the inclusion in the "final" list of articles subject to appraisement which were imported in other and later years than the fiscal year 1954. This conclusion appears evident, especially from the substitution of the language "or would have been" for the word "actually," with respect to the appraisement of merchandise under section 402a of the Tariff Act of 1930, as amended, and, in my opinion, such substitution of language indicates that Congress, in enacting the pertinent legis-

lation, was aware of the possibility that there may have been no 1954 appraisements of merchandise which was thereafter imported and that the Secretary of the Treasury, after the investigation required by law pursuant to congressional direction, could place on the final list of articles required to be appraised under section 402a of the Tariff Act of 1930, as amended, such imported articles as the Secretary determined should be specified on such list, in order to provide equal protection to domestic manufacturers of like or similar merchandise and to exclude from the final list only such imported merchandise as was embraced within the specific terms of the statute as to merchandise found to be reduced by less than 5 per centum.

In the case at bar, the Secretary, after due investigation provided for under section 6(a) of the Customs Simplification Act of 1956, determined that the imported commodity, "Deorlene Brilliant Red R," would be subject to a 5 per centum or more lower valuation under the applicable provisions of the Customs Simplification Act than it "would have been," if the former provisions of the law were applicable. Accordingly, the said commodity was placed on the final list, and appraisement of the merchandise was made on the basis of United States value, as defined in section 402a(e) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, pursuant to paragraph 28 (c) and (d) of the said act, as amended.

Further substantiation of the conclusion herein expressed that the Secretary of the Treasury, in determining what articles should be placed on the "final" list, pursuant to section 6(a) of the Customs Simplification Act, was not limited to the consideration of such articles as were imported or appraised during the fiscal year 1954, may be found in the adoption of an amendment made by Senator Frear of Delaware during the hearings had with respect to the enactment of the Customs Simplification Act, which is noted here below.

In the discussion in the United States Senate relative to the Customs Simplification Act of 1956 (Congressional Record, vol. 102, part 10, page 13298, 84th Congress, 2d session), the following appears relative to the setting up of the so-called preliminary lists by the Secretary of the Treasury:

Mr. Frear. The Treasury Department witness in his testimony, in reply to the questions by the Senator from Virginia [Mr. Byrd] has indicated that the trial period for this complicated process of simplification will probably last 5 years. Is that correct?

Mr. Smathers. That is correct.

Mr. Frear. Should there be unforeseen delays between the periods for the establishment of each of the four lists referred to, the trial period might be extended to 6 years, and perhaps more; is that correct?

Mr. Smathers. That is correct.

Mr. Frear. During those 5 or 6 years or more, two systems of valuation would be in effect, and an article might be shifted from one system to another perhaps as many as three times. Does the Senator agree with that?

Mr. Smathers. That could be the case. It is a possibility. I do not know whether it is a probability, but it is a possibility.

Mr. Frear. This on-again, off-again character of the list would make it impossible for an importer to know from one year to another, for 6 years, perhaps, under what system duties on his imported article might be assessed. Would this be in favor of expansion of trade? Would it not create great confusion both at home and abroad?

Mr. Smathers. The Treasury Department witnesses did not think so; nor did the majority of the members of the Senate Finance Committee think so.

Mr. Frear. It is not clear in the bill which system of valuation would apply to articles imported during the trial period, and which were not imported during the basic period, that is, the year 1954. Where would they be listed?

Mr. Smathers. The bill does not say. I presume the listing is a matter of experimentation. I assume the administrators will make one basic list, and add each year to that particular list.

Mr. Frear. I must agree with the Senator. I believe it is a matter of experimentation.

\*        \*        \*        \*        \*        \*        \*

Mr. Frear. The bill provides that the Secretary shall make public four successive preliminary and final lists of imported articles which are 95—or less—percent of the average values at which such articles would have been appraised in accordance with existing value provisions. These lists from first to last will be predicated on "such investigation as he"—the Secretary—"deems necessary." Provision is made for interested parties to present to the Secretary reason to believe that articles which are not on the list should be included. Here again the bill provides that the Secretary "shall cause such investigation of the matter as he deems necessary."

No provision is made for hearings or appeal or for disclosure of the basis for his decisions. Neither is there any provision in the bill to indicate what the Secretary will accept as reason to believe that an article has been omitted or dropped by error or inadvertance. Provision is made for the Secretary to report to Congress, but no standards or requirements are set forth as to the information which should be given and published. All this is left to the discretion of the Secretary.

Since all reports are filed and all investigations and decisions are made and passed without recourse—solely on the Secretary's discretion—does this bill not ask Congress to place in the hands of one man complete unappealable discretion to administer a bill which admittedly cuts existing duties an indeterminate amount?

Mr. Smathers. Apparently considerable discretionary authority is granted.

Mr. Frear. I think the bill shows that there is considerable discretionary authority.

Mr. Byrd. Mr. President, as I understand the amendment of the Senator from Delaware, he wishes to provide for 1 list instead of 4 lists. Is that correct?

Mr. Frear. The Senator is correct.

Mr. Byrd. Is there any other change proposed by the Senator's amendment?

Mr. Frear. That is what the amendment proposes to do.

Mr. Byrd. To provide for 1 list instead of 4?

Mr. Frear. One list instead of four.

Mr. Byrd. I am willing to take the amendment to conference. It may be some improvement. We can consider it in conference. As I understand, the

amendment has not been printed, but all it does is to provide for 1 list instead of 4.

Mr. Frear. So that the importer can take the information from 1 list instead of 4, as to the basis for the tariff or duty.

Mr. Byrd. We will take the amendment to conference and study it.

*        *        *        *        *        *        *

It seems apparent, from the above, that considerable discretionary authority was given by Congress to the Secretary of the Treasury to include on the "final" list, after such investigation as he deemed necessary, such imported articles, the average appraised value of which would be lower by 5 per centum or more, if appraised in accordance with the new valuation provisions of section 402 of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, as compared with the value at which they would be subject to appraisement under the old valuation provisions of section 402, as amended. Such consideration by the Secretary was not limited, in my opinion, only to merchandise appraised during the fiscal year 1954. In the case at bar, as heretofore noted, the Secretary, after investigation, determined that the imported commodity should be placed on the final list and thus be made subject to appraisement under the old valuation provisions. This determination by the Secretary was, in my opinion, a valid exercise of the power conferred upon him by Congress. Accordingly, the imported commodity, "Deorlene Brilliant Red R," should not be stricken from the final list, published in T.D. 54521 and in the Federal Register (23 F.R. 539).

On the record presented, I find as facts:

1. That the merchandise involved herein consists of a coal-tar color, "Deorlene Brilliant Red R," exported from Switzerland on June 8, 1959.

2. That the following notices relating to the preparation of the preliminary and final lists, as provided for in section 6(a) of the Customs Simplification Act of 1956, were published in the Federal Register:

(a) A notice inviting comments relating to publication of the preliminary list (21 F.R. 8669, November 9, 1956).

(b) A notice extending the time for comments relating to publication of the preliminary list (22 F.R. 152, January 5, 1957).

(c) A notice of procedure to be followed by domestic interests after publication of the preliminary list (22 F.R. 6663, August 20, 1957).

(d) A preliminary list (22 F.R. 6842, August 23, 1957).

(e) The final list (23 F.R. 539, January 28, 1958).

3. That "Deorlene Brilliant Red R" appears on the final list (T.D. 54521). The merchandise in question was not, however, on the preliminary list, published in the Federal Register (22 F.R. 6842), but

was added after investigation by the Secretary of the Treasury, pursuant to section 6(a) of the Customs Simplification Act of 1956.

4. That "Deorlene Brilliant Red R" was not appraised during fiscal year 1954, the first importation of the commodity in question being in September 1956.

I conclude as matters of law:

1. That the proper basis for appraisement of the merchandise here involved is United States value, as that value is defined in section 402a(e) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

2. That such statutory value was the appraised value, namely, $2.0191 per pound, net, packed.

Judgment will be rendered accordingly.