**CIBA COMPANY, Inc.**

v.

**UNITED STATES.**

No. 10787; Reappraisement
No. R 59/8862.

United States Customs Court,
Second Division, Appellate Term.
March 31, 1965.

Eugene R. Pickrell, New York City, for appellant.

John W. Douglas, Asst. Atty. Gen. (Harold L. Grossman, New York City, Trial Atty.), for appellee.

Before LAWRENCE, RAO, and FORD, JJ.

LAWRENCE, Judge.

The Ciba Company, Inc., appellant, invoked the jurisdiction of this court by filing an application pursuant to the provisions of section 2637 of title 28, United States Code, to review the decision and judgment of the trial court in Ciba Company, Inc. v. United States, 53 Cust.Ct. 360, Reap.Dec. 10787, decided June 30, 1964.

The merchandise, the dutiable value of which is at issue here, is a coal-tar dye known as "Neolan Flavine GFE 24%," which was exported from Switzerland on February 21, 1959.

The commodity was appraised at $1.-7511 per pound, net, packed, at its United States value, as that value is defined in section 402a(e) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956 (70 Stat. 943), and pursuant to the provisions of paragraph 28(c) and (d) of said tariff act, as amended, supra.

Appellant agrees that the proper statutory basis for appraising the importation in question is United States value, but contends that such value should be as it is defined in section 402(c) of said tariff act, as amended by the Customs Simplification Act, supra.

The valuation statutes:

Section 402a(e)—

(e) The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

Section 402(c)—

(c) UNITED STATES VALUE.—For the purposes of this section, the United States value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal market of the United States for domestic consumption, packed ready for delivery, in the usual wholesale quantities and in the ordinary course of trade, with allowances made for—

(1) any commission usually paid or agreed to be paid, or the addition for profit and general expenses usually made, in connection with sales in such market of imported merchandise of the same class or kind as the merchandise undergoing appraisement;

(2) the usual cost of transportation and insurance and other usual expenses incurred with respect to such or similar merchandise from the place of shipment to the place of delivery, not including any expense provided for in

subdivision (1) of this subsection; and

(3) the ordinary customs duties and other Federal taxes currently payable on such or similar merchandise by reason of its importation, and any Federal excise taxes on, or measured by the value of, such or similar merchandise, for which vendors at wholesale in the United States are ordinarily liable.

If such or similar merchandise was not so sold or offered at the time of exportation of the merchandise undergoing appraisement, the United States value shall be determined, subject to the foregoing specifications of this subsection, from the price at which such or similar merchandise is so sold or offered at the earliest date after such time of exportation but before the expiration of ninety days after the importation of the merchandise undergoing appraisement.

Paragraph 28—

Coal-tar products:

\*       \*       \*       \*       \*       \*

(c) The ad valorem rates provided in this paragraph shall be based upon the American selling price \* \* \*, of any similar competitive article manufactured or produced in the United States. If there is no similar competitive article manufactured or produced in the United States then the ad valorem rate shall be based upon the United States value, \* \* \*.

(d) For the purposes of this paragraph any coal-tar product provided for in this Act shall be considered similar to or competitive with any imported coal-tar product which accomplishes results substantially equal to those accomplished by the domestic product when used in substantially the same manner.

The case was submitted for determination upon an agreed statement of facts set forth in the following stipulation:

IT IS HEREBY STIPULATED AND AGREED by and between the attorney for the Plaintiff and the Assistant Attorney General for the United States, defendant, that:

1. The merchandise at bar consists of Neolan Flavine GFE 24%, a coal-tar dye, exported from Switzerland, during the first half of the calendar year 1959.

2. "Neolan Flavine GFE 24%" appears on the final list, T.D. 54521, preceded by an asterisk (\*), which asterisk indicates that the article thus marked was not on the preliminary list published in the Federal Register dated August 23, 1957 (22 F.R. 6842), but was added after investigation provided for under section 6(a) of the Customs Simplification Act of 1956.

3. The following notices relating to the preparation of the preliminary and final lists referred to in section 6(a) of said Act were published in the Federal Register:

(A) A notice inviting comments relating to publication of the Preliminary List. (Friday, November 9, 1956, 21 F.R. 8669.)

(B) A notice extending the time for comments relating to publication of the preliminary list. (Saturday, January 5, 1957, 22 F.R. 152.)

(C) A notice of procedure to be followed by domestic interests after publication of the preliminary list. (Tuesday, August 20, 1957, 22 F.R. 6663.)

(D) The preliminary list (Friday, August 23, 1957, 22 F.R. 6842.)

(E) The final list (Tuesday, January 28, 1958, 23 F.R. 539).

4. Appraisement was made on the basis of United States value as defined in section 402a(e), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, pursuant to Paragraph 28(c) and (d) of the Tariff Act of 1930, as amended. It is claimed by plaintiff that

United States value as defined in section 402(c), Tariff Act of 1930, as amended, supra, should have been the basis of appraisement.

5. Neolan Flavine GFE 24% was not appraised during the fiscal year 1954.

6. If the final list designation of the merchandise is proper, the appraised value of $1.7511 per pound, net packed, represents United States value. If the final list designation of the merchandise is invalid, United States value, as claimed, is $1.6986 per pound, net packed.

7. This appeal may be submitted on this stipulation, limited to the merchandise as aforesaid, and plaintiff may have sixty days from date of submission in which to file a brief and defendant may have sixty days from receipt of plaintiff's brief in which to file a brief.

At this point, is brought into focus what is known in customs administration as the "final list." This list was prepared by the Secretary of the Treasury in the exercise of his statutory power to "make public a list of the articles which shall be valued in accordance with section 402a, Tariff Act of 1930, as amended." Congressional authority for the Secretary to take this action is contained in section 6(a) of the Customs Simplification Act, supra. This statute will be reviewed later in this opinion. For convenient reference, it is here set forth:

Sec. 6(a). The Secretary of the Treasury shall determine and make public a list of the articles which shall be valued in accordance with section 402a, Tariff Act of 1930, as amended by this Act, as follows:

As soon as practicable after the enactment of this Act the Secretary shall make public a preliminary list of the imported articles which he shall have determined, after such investigation as he deems necessary, would have been appraised in accordance with section 402 of the Tariff Act of 1930, as amended by

this Act, at average values for each article which are 95 (or less) per centum of the average values at which such article was actually appraised during the fiscal year 1954. If within sixty days after the publication of such preliminary list any manufacturer, producer, or wholesaler in the United States presents to the Secretary his reason for belief that any imported articles not specified in such list and like or similar to articles manufactured, produced, or sold at wholesale by him would have been appraised in accordance with such section 402 at average values which are 95 (or less) per centum of the average values at which they were or would have been appraised under section 402a, Tariff Act of 1930, as amended by this Act, the Secretary shall cause such investigation of the matter to be made as he deems necessary. If in the opinion of the Secretary the reason for belief is substantiated by the investigation, the articles involved shall be added to the preliminary list and such list, including any additions so made thereto, shall be published as a final list. Every article so specified in the final list which is entered, or withdrawn from warehouse, for consumption on or after the thirtieth day following the date of publication of the final list shall be appraised in accordance with the provisions of section 402a, Tariff Act of 1930, as amended by this Act.

Appellant does not challenge the Secretary's authority to prepare the final list but contends only in its brief that the Secretary exceeded his statutory authority when he included therein the subject merchandise—Neolan Flavine GFE 24% —"which was not actually appraised nor even imported during the 'fiscal year 1954' as provided for in Section 6(a) of the Customs Simplification Act of 1956."

The gravamen of appellant's complaint is twofold. Appellant insists that the conditions guiding the preparation of the preliminary list require that "1) when

appraised by the new value provisions in said act, the average values for such articles would have been 95 (or less) per centum of the average values of the articles as actually appraised, 2) the articles must have been 'actually appraised during the fiscal year 1954.' " It is also urged that the absence of a yardstick or guideline placing some definite limitations on the discretionary action of the Secretary requires a finding that he overstepped the legal boundaries of his power.

Our examination of the context of section 6(a) satisfies us that Congress placed substantially equivalent limitations on the preparation of both the preliminary and the final list. In addition to the requirements for the preliminary list, above quoted from appellant's brief, the statute specifies that appropriate steps toward the preparation of the final list must be taken "within sixty days after the publication of such preliminary list" by manufacturers, producers, or wholesalers desiring an investigation by the Secretary. If the Secretary, after such investigation as he deems necessary, is satisfied that representations of any manufacturer, producer, or wholesaler that any imported article not specified in the preliminary list, like or similar to articles maufactured, produced, or sold at wholesale by him *would have been* appraised in accordance with section 402 at average values which are 95 (or less) per centum of the average values "at which *they were or would have been* appraised under section 402a, Tariff Act of 1930, as amended" [italics supplied], they shall be added to the preliminary list "and such list, including any additions so made thereto, shall be published as a final list."

The statute—section 6(a)—moreover provides that every article specified in the final list which is entered, or withdrawn from warehouse, for consumption on or after the 30th day of publication of the final list, shall be appraised in accordance with the provisions of section 402a, Tariff Act of 1930 "as amended by this Act."

It seems to us that the limitation of time for starting an investigation, the articles involved, their value, the actual investigation by the Secretary and his findings combine to provide an ample yardstick for the guidance of the Secretary.

▪ We are clearly of the opinion that section 6(a) does not require that an article must have been appraised "during the fiscal year 1954" in order to be included in the final list.

The trial court found that the facts in this case are the same in all material respects as in Ciba Company, Inc. v. United States, 50 Cust.Ct. 493, Reap.Dec. 10532, the parties being the same. In fact, the only difference is that the coaltar product now before us is known as Neolan Flavine GFE 24%, whereas, in the earlier Ciba case, the article was identified as "Deorlene Brilliant Red R." In view of the similarity of the two cases, the court stated:

* * * After reviewing the first Ciba case and studying the stipulation and briefs of the parties in the case now at bar, the court is of the opinion that the present case is controlled by the previous decision. The essential facts are the same, and the law and reasoning set forth in the previous Ciba case are fully applicable to the case now under consideration. The court deems it unnecessary to repeat herein the reasoning in the former case.

In the previous Ciba case, the court, in an elaborate and well-reasoned opinion, thoroughly explored applicable statutes and the congressional history of section 6(a), supra, and saw no escape from the conclusion that the appraisement therein was in accordance with the law and must be affirmed. We deem it appropriate to incorporate herein that portion of the court's opinion in the former Ciba case which reads as follows:

It is the contention of the plaintiff, in this case, that the Secretary of the Treasury exceeded his statutory authority by designating the

imported commodity, "Deorlene Brilliant Red R," in the "final" list, promulgated pursuant to section 6 (a) of the Customs Simplification Act, supra, maintaining, in this connection, that the Secretary, in determining what merchandise to include on the "final" list, was restricted to a consideration of articles actually appraised in the fiscal year 1954.

The record discloses that "Deorlene Brilliant Red R" appears on the "final" list, T.D. 54521, preceded by an asterisk (*), which asterisk indicates that the article thus marked was not on the "preliminary" list, published in the Federal Register, dated August 23, 1957 (22 F.R. 6842), but was added after the investigation provided for under section 6(a) of the Customs Simplification Act of 1956. It further appears that the merchandise in question was never appraised during the fiscal year 1954, the first importation of this merchandise being in 1956.

It has been agreed that if the final list designation of the merchandise is proper, the appraised value represents United States value, that is, the value under the "old" valuation provisions. If the final list designation of the merchandise was invalid, then, the proper United States value is that value, as defined under section 402(c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, and that such value is $1.9581 per pound, net, packed.

It appears significant, in our present determination, to note a comparison of the language of section 6 of the Customs Simplification Act of 1956, supra, as first proposed to the Congress, with the version as later reported by the Senate Finance Committee—(Senate Report No. 2560). In the version of section 6(a), as adopted by the Senate Finance Committee, there was deleted from said section, as originally proposed with respect to the placing

on the preliminary list imported articles which had not been previously specified on such list, the language "entered during the fiscal year 1954 but" and, further, as to articles not specified on said preliminary list, the words "or would have been," which appeared prior to the language "appraised under section 402a, Tariff Act of 1930, as amended by this Act," were substituted for the word "actually," which had appeared before the last above-quoted language as it was originally proposed in said section 6, supra. Section 6, as finally enacted after amendment by the Senate, is for all practical purposes identical with the version as reported by the Senate Finance Committee, except that it provides for one final list, instead of four final lists, as originally proposed.

In my opinion, the effect of the deletion from section 6 of the Customs Simplification Act of 1956, supra, as originally proposed, of the language "entered during the fiscal year 1954 but" and the further substitution of the words "or would have been," as heretofore noted, for the word "actually," with respect to the appraisement of imported articles, would appear to indicate that it was not the intention of Congress to limit the Secretary of the Treasury in his consideration of articles to be placed on the "final" list and, specifically, that it was not the intention to confine such consideration to merchandise which was actually appraised during the fiscal year of 1954, but that the legislation authorized under the Customs Simplification Act permitted the inclusion in the "final" list of articles subject to appraisement which were imported in other and later years than the fiscal year 1954. This conclusion appears evident, especially from the substitution of the language "or would have been" for the word "actually," with respect to the appraise-

ment of merchandise under section 402a of the Tariff Act of 1930, as amended, and, in my opinion, such substitution of language indicates that Congress, in enacting the pertinent legislation, was aware of the possibility that there may have been no 1954 appraisements of merchandise which was thereafter imported and that the Secretary of the Treasury, after the investigation required by law pursuant to congressional direction, could place on the final list of articles required to be appraised under section 402a of the Tariff Act of 1930, as amended, such imported articles as the Secretary determined should be specified on such list, in order to provide equal protection to domestic manufacturers of like or similar merchandise and to exclude from the final list only such imported merchandise as was embraced within the specific terms of the statute as to merchandise found to be reduced by less than 5 per centum.

In the case at bar, the Secretary, after due investigation provided for under section 6(a) of the Customs Simplification Act of 1956, determined that the imported commodity, "Deorlene Brilliant Red R," would be subject to a 5 per centum or more lower valuation under the applicable provisions of the Customs Simplification Act than it "would have been," if the former provisions of the law were applicable. Accordingly, the said commodity was placed on the final list, and appraisement of the merchandise was made on the basis of United States value, as defined in section 402a(e) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, pursuant to paragraph 28(c) and (d) of the said act, as amended.

Our independent study of the statute, the legislative history, and the agreements set forth by adversary counsel in their well-prepared briefs, convinces us that the conclusion reached herein by the court below was sound and should be affirmed.

Accordingly, the court finds as facts:

1. The merchandise involved in the instant case consists of "Neolan Flavine GFE 24%," a coal-tar dye, which was exported from Switzerland on February 21, 1959.

2. "Neolan Flavine GFE 24%" appears on the final list, T.D. 54521, preceded by an asterisk (*), which asterisk indicates that the article thus marked was not on the preliminary list published in the Federal Register, dated August 23, 1957 (22 F.R. 6842), but was added after investigation provided for under section 6(a) of the Customs Simplification Act of 1956.

3. The following notices relating to the preparation of the preliminary and final lists referred to in section 6(a) of said act were published in the Federal Register:

(A) A notice inviting comments relating to publication of the Preliminary List. (Friday, November 9, 1956, 21 F.R. 8669.)

(B) A notice extending the time for comments relating to publication of the preliminary list. (Saturday, January 5, 1957, 22 F.R. 152.)

(C) A notice of procedure to be followed by domestic interests after publication of the preliminary list. (Tuesday, August 20, 1957, 22 F.R. 6663.)

(D) The preliminary list (Friday, August 23, 1957, 22 F.R. 6842.)

(E) The final list (Tuesday, January 28, 1958, 23 F.R. 539.)

4. The merchandise in issue was appraised on the basis of United States value, as defined in section 402a(e), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, pursuant to paragraph 28(c) and (d) of the Tariff Act of 1930, as amended.

5. The coal-tar dye known as "Neolan Flavine GFE 24%" was not appraised during the fiscal year 1954.

6. The instant merchandise was appraised at \$1.7511 per pound, net, packed, on the basis of United States value.

We conclude as matters of law:

1. The inclusion of the merchandise at bar in the final list was within the proper exercise of the power of the Secretary of the Treasury.

2. The proper basis for appraisement of the merchandise in controversy is United States value, as that value is defined in section 402a(e) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, supra.

3. That said value is represented by the appraised value, namely, \$1.7511 per pound, net, packed.

Judgment will be entered affirming the judgment of the trial court.